IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD STOCKTON, | : | Civil No. 3:19-CV-02228 |
| Plaintiff, | : | |
| v. | : | |
| JOHN WETZEL, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

# **MEMORANDUM**

Before the court is Defendants' motion for judgment on the pleadings. (Doc. 82.) Plaintiff has also filed two motions seeking sanctions against Defendants that are pending before the court. (Docs. 78, 84.) For the below stated reasons, the court will grant Defendants' motion for judgment on the pleadings in part, and deny Plaintiff's motions.

## PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint, which was received and filed by the court in December of 2019. (Doc. 1.) In the complaint, Plaintiff alleges retaliation, cruel and unusual punishment, due process violations, and defamation of character by the following thirteen Department of Corrections ("DOC"): (1) John Wetzel ("Wetzel"), Secretary of Corrections; (2) Barry Smith ("Smith"), Superintendent; (3) D.J. Close ("Close"), Deputy; (4) Knowles, Captain; (5) McClare, Sergeant; (6) Baylist, Correctional Officer; (7) Hunt,

1

Correctional Officer; (8) Neyman, Correctional Officer; (9) Dyke, Correctional Officer; (10) DuFour, Correctional Officer; (11) Larcass, Correctional Officer; (12) Miller, Captain; and (13) Swanson, Lieutenant.  (Doc. 1.)  The complaint details a series of events that Plaintiff argues are evidence of retaliation beginning in April of 2016.  (*Id*.)

Specifically, Plaintiff alleges that on April 7, 2016, he was threatened with a "night stick" by Defendant Hunt for filing paperwork "for wrongs committed against me."  (*Id*., pp. 2–3.)[1]  On June 5, 2016, Plaintiff alleges that food was withheld by Defendants Baylist, McClare, and Swanson as punishment for filing grievances.  (*Id*., p. 3.)  On June 13, 2016, Plaintiff alleges that he was sprayed with O.C. after informing Defendant Miller about the June 5, 2016 withholding of food.  (*Id*., pp. 3–4.)  On June 15, 2016, Plaintiff alleges he was threatened by Defendant Swanson "that you are coming out of that cell one way or another after all the paperwork you've been filing against officers."  (*Id*., p. 5.)  He alleges that he was placed in a cell without water for seven days and was not able to wash the O.C. spray off of himself.  (*Id*., p. 6.)  He alleges that the lack of water precluded him from fasting for Ramadan.  (*Id*.)  He alleges that during this time he was told by Defendant Smith that if he continued to file grievances, he would continue to experience adverse treatment.  (*Id*.)

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

On July 13, 2016, Plaintiff alleges that he overheard threats made by C.O. Dyke about messing up cells. (*Id.*, p. 5.) Plaintiff states that when he returned from the yard, his cell was in disarray. (*Id.*) When he inquired about the state of his cell, he alleges that Defendants Dyke and DuFour pulled his fingers through the food aperture causing pain and eventually used O.C. spray on him. (*Id.*)

Plaintiff alleges that on January 28, 2018, he signed up for a haircut. (*Id.*, p. 6.) Plaintiff was denied this haircut and alleges that staff were implementing this denial as punishment. (*Id.*, pp. 6–7.) He also alleges that he was threatened that day while the meal was distributed and while the trays were picked up. (*Id.*, p. 7.) He then alleges that he was sprayed with O.C. spray with no justification. (*Id.*) Plaintiff states that Defendant DuFour then wrote him up for making threats to justify the use of O.C. spray. (*Id.*) Plaintiff claims all these actions were done in retaliation for his sexual preference and for filing grievances. (*Id.*, pp. 8–9.)

Plaintiff also alleges that on April 11, 2018, he was sprayed with a fire extinguisher of O.C. and placed in a cell with no water, no clothing, and only a mattress. (*Id.*, p. 9.)

Defendants waived service in September of 2020 and answered the complaint in November of 2020. (Docs. 12, 24.) Fact discovery has been completed. (Doc. 53.) Defendants have filed the instant motion for judgment on the pleadings. (Doc. 82.) Plaintiff has filed a brief in opposition. (Doc. 86.)

Defendants have not filed a reply. The motion is now ripe to be addressed by the court.

### JURISDICTION

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

### VENUE

Venue is generally proper in the district where the alleged acts and omissions giving rise to the claims occurred. 28 U.S.C. § 1391(b)(2).

The complaint fails to plead venue or identify the location in which the alleged acts and omissions took place. (Doc. 1.) However, the grievances that Plaintiff attached to the complaint are stamped as received by or addressed to the State Correctional Institution in Houtzdale, Pennsylvania ("SCI-Houtzdale"). (Doc. 1, pp. 10–18, 24, 26–28.) Therefore, the court assumes the alleged acts and omissions took place at SCI-Houtzdale, which is located in southern Clearfield County. SCI-Houtzdale is located in the Western District of Pennsylvania. *See* 28 U.S.C. § 118(c). Therefore, this action was filed in the improper venue.

Improper venue is a waivable defense. Fed R. Civ. P. 12(h). To preserve a challenge regarding improper venue, a defendant must raise the issue in a responsive pleading. *Id.* at 12(b)(3). If the responsive pleading does not challenge

improper venue, the defense is waived. *Id.* at 12(h). Further, when a defendant does not "interpose timely and sufficient objection to the venue," the district court retains jurisdiction, even if venue would otherwise be improper. 28 U.S.C. § 1406(b).

Here, Defendants have not moved to dismiss this matter for improper venue pursuant to Rule 12(b)(3), nor have they raised improper venue as an affirmative defense in their answer. (Doc. 24.) Under these circumstances, this court finds that Defendants have waived improper venue, thereby making venue in this district proper. *See Marx v. Schilchter*, No. 3:10-cv-257, 2011 WL 1988424, at *1 n. 3 (M.D. Pa. May 23, 2011).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(c), once the pleadings are closed, but within such time as to not delay trial, a party may move for judgment on the pleadings. The standard of review is identical to that of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), except that the court reviews not only the complaint, but also the answer and written instruments attached to the pleadings. *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *Iseley v. Talaber*, No. 5-CV-444, 2008 WL 906508, at *2 (M.D. Pa. Mar. 31, 2008) (citing 2 James Wm. Moore et al., *Moore's Federal Practice—Civil* § 12.38). If matters outside the pleadings are presented to and not excluded by the court, the motion

shall be treated as one for summary judgment and disposed of as provided in Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 12(d). The court should consider the allegations in the pleadings, the exhibits attached thereto, matters of public record, and "undisputedly authentic" documents not attached to the pleadings if Plaintiff's claims are based on such documents, and may do so without converting the motion to one for summary judgment. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196–97 (3d Cir. 1993); *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004). Because a Rule 12(c) "motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom" in the nonmovant's favor. *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006). Judgment on the pleadings is appropriate only when the moving party "clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Minn. Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x 143, 147 (3d Cir. 2011).

## DISCUSSION

Plaintiff's complaint and Defendants' motion for judgment on the pleadings raise four distinct issues: (1) the claims against Defendants in their official capacity; (2) the statute of limitations on Plaintiff's claims; (3) the personal

involvement of Defendants Wetzel, Knowles, and Close; and (4) the remaining claims. The court will address each in turn.

### A. All Claims For Monetary Damages Against Defendants In Their Official Capacity Will Be Dismissed.

A suit for monetary damages brought against a state official in his or her official capacity is not a suit against that official; it is a suit against that official's office. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted); *Allen v. New Jersey State Police*, 974 F.3d 497, 506 (3d Cir. 2020). This is no different from a suit against the State itself, which is barred by the Eleventh Amendment. *See Will*, 491 U.S. at 66, 70-71; *Pennhurst State School & Hops. V. Halderman*, 465 U.S. 89, 98-99 (1984) (explaining that the Eleventh Amendment bars suits against a State in federal court).

There are, however, two exceptions to Eleventh Amendment immunity— (1) when the State has waived its immunity; or (2) Congress has exercised its power under Section 5 of the Fourteenth Amendment to override that immunity. *See Will*, 491 U.S. at 66; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (recognizing these two exceptions to a State's Eleventh Amendment immunity).

The court finds that neither one of these exceptions apply here. As explained by the Third Circuit, the Commonwealth of "Pennsylvania has not waived its sovereign immunity defense in federal court[,]" and "Congress did not abrogate Eleventh Amendment immunity via § 1983[.]" See *Downey v.*

7

*Pennsylvania Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) (citation omitted); *see also* 42 Pa. Stat. and Cons. Stat. Ann. § 8521(b) (stating that "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States"); *Quern v. Jordan*, 440 U.S. 332, 345 (1979) (concluding that the history and language of §1983 establish that Congress did not intend to make the States liable under that statute).

To the extent, however, that Defendants seek dismissal of Plaintiff's § 1983 claims for prospective injunctive relief, the court concludes that Defendants are not entitled to dismissal. Plaintiff requests injunctive relief of "not to be retaliatory transferred." (Doc. 1, p. 2.) When a plaintiff sues state officials in their official capacities for prospective injunctive relief under § 1983, Eleventh Amendment immunity is not extended to those officials. *See Will*, 491 U.S. at 71 n.10 (noting that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State'" (citations omitted)); *Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011) (explaining that a state employee may be sued in his official capacity, not "for all injunctive relief," but rather, only for "*prospective* injunctive relief," because official-capacity claims

for prospective injunctive relief are not treated as actions against the State (citing *Will*, 491 U.S. at 71 n.10) (emphasis in original)).

Accordingly, for all of these reasons, the court will dismiss the § 1983 claims for monetary damages against all Defendants. The court will deny Defendants' motion to the extent that it seeks dismissal of Plaintiff's § 1983 official-capacity claims against Defendants for prospective injunctive relief.

### B. All Claims Occurring Before May 26, 2017 Will Be Dismissed.

Federal civil rights claims brought pursuant to 42 U.S.C. § 1983 are subject to Pennsylvania's two-year statute of limitations applicable to personal injury actions. *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78–79 (3d Cir. 1989); *see also* 42 Pa. Cons. Stat. Ann. § 5524. The majority of Plaintiff's claims stem from interactions in 2016. (Doc. 1.) The complaint was received by the court and filed on December 30, 2019, but it is dated May 26, 2019. (*Id.*) The envelope it was mailed in is postmarked December 26, 2019. (*Id.*) Under the prison mailbox rule a document of a pro se prisoner is generally deemed to be "filed" with the court on the date the prisoner delivers the document to prison officials for forwarding to the court. *See Houston v. Lack,* 487 U.S. 266, 271–72, 276 (1988). Based on the date of execution of the complaint, May 26, 2019, it is deemed filed on May 26, 2019.

Defendants claim that the events predating December 30, 2017 should be dismissed as brought in violation of the statute of limitations. (Doc. 83, pp. 16–

9

17.) In response, Plaintiff argues that claims associated with the early events are part of an "ongoing continuous violation" of his rights and conspiracy to retaliate against him. (Doc. 86, p. 5.) Here, both parties cannot fully succeed on their arguments. Under the prisoner mailbox rule, Plaintiff's complaint was filed on May 26, 2019, not December 30, 2019.[2] Additionally, Plaintiff did not allege conspiracy in his complaint in regards to the actions predating May 26, 2017, but raises each incident individually. (Doc. 1.) He only raises a claim of conspiracy in regards to the events occurring in January of 2018, where he alleges that Defendant DuFour stated that "staff could handle Stockton in any manner as long as his Faggots continued to file paperwork (grievances, etc.) against staff and institution, this showing a conspiracy." (*Id*, pp. 8–9.) Therefore, his assertions that he can overcome the statute of limitations challenge with conspiracy will not succeed because he has failed to allege a conspiracy that existed prior to May 26, 2017.

In light of the complaint being deemed filed on May 26, 2019, and the two-year statute of limitations under Pennsylvania law, all claims that predate May 29, 2017 will be dismissed.

---

[2] However, the court notes as a practical matter that the same claims will be dismissed regardless of whether the filing date was May 26, 2019 or December 30, 2019.

### C. All Claims Against Defendants Wetzel, Knowles, and Close Will Be Dismissed.

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). "[An individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of [respondent] superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Here Plaintiff has failed to allege any personal involvement, direction, or actual knowledge and acquiescence on the part of Defendants Wetzel, Knowles, and Close.

### 1. Defendant Wetzel

Plaintiff fails to identify any personal actions on behalf of Defendant Wetzel. (Doc. 1.) Therefore, the court is left to assume that Plaintiff's claims against Defendant Wetzel are in his supervisory capacity. As stated above, liability cannot be predicated solely on the operation of respondent superior. Therefore, all claims against Defendant Wetzel will be dismissed.

### 2. Defendant Knowles

For the events that occurred after May 26, 2017, Plaintiff only identifies Defendant Knowles for his alleged knowledge of the January 27, 2018 events. (Doc. 1, p. 9.)  He alleges that Defendant Knowles reviewed and signed the grievance associated with the January 27, 2018 events.  (Doc. 1, p. 30.) "Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement."  *Rode*, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *see also Brooks v. Beard*, No. 05-3196, 2006 WL 332547, 167 F. App'x 923, 925 (3d Cir. Feb. 14, 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).  Therefore, all remaining claims against Defendant Knowles will be dismissed.

### 3. Defendant Close

As to Defendant Close, Plaintiff alleges that he made threatening comments to Plaintiff including "[y]ou leave us alone, and we will leave you alone."  (Doc., p. 9.)  There are no allegations that Defendant Close acted in any manner to retaliate against Plaintiff or violate any of his constitutional rights.  These words

themselves are not enough to demonstrate personal involvement. Therefore, all claims against Defendant Close will be dismissed.

### D. The Remaining Claims Will Be Partially Dismissed.

The remaining claims include the denial of the haircut and use of O.C. spray on January 28, 2018 and the use of O.C. spray on April 11, 2018. (Doc. 1, pp. 6–9.) As to the denial of the haircut, Plaintiff failed to name a single Defendant as the culprit of the alleged retaliation. (*Id.*, p. 6.) Instead, he identifies the actors as "staff." (*Id.*) Likewise, Plaintiff failed to identify a single actor in regards to the April 11, 2018 incident including O.C. spray. (*Id.*, p. 9.) While Defendants' motion for judgment on the pleadings did not specifically address these claims, the court has the authority under 28 U.S.C. § 1915(e)(2)(ii) to dismiss any claims it deems to fail to state a claim on which relief may be granted. Therefore, the court will likewise dismiss the claims associated with these two events because Plaintiff failed to identify individual defendants associated with these events.

Plaintiff alleges that Defendants Larcass and DuFour were the individuals who sprayed him with O.C. and called Plaintiff a "faggot," on January 28, 2018. (*Id.*, pp. 7–8.) Plaintiff alleges that there was no reason for Defendant DuFour to spray him. (*Id.*, p. 8.) He then alleges that Defendant DuFour wrote him up for making threats merely to justify the use of the O.C. spray. (*Id.*) This is the sole event that is within the relevant time period that names individuals involved in the

13

action. Defendants' motion for judgment on the pleadings failed to specifically address the claims against Defendants Larcass and DuFour. (Doc. 83.) Therefore, the claims raised against Defendants Larcass and DuFour will survive Defendants' motion for judgment on the pleadings.

### E. Plaintiff's Motions Will Be Dismissed.

Plaintiff has filed a motion to hold defendants in contempt and a motion seeking the forfeiture of Defendants' counsel. (Docs. 78, 84.) In the motion to hold Defendants in contempt, Plaintiff seeks to hold both Defendants and the Attorney General's Office in contempt for failing to respond to discovery in accord with the court's March 14, 2022 order granting his motion to compel in part. (Doc. 78.) In the March 14, 2022 order, the court ordered Defendants to resupply evidence to Plaintiff. (Doc. 49.) Plaintiff asserts that Defendants' January 6, 2022 letter stating that discovery was hand delivered to Plaintiff in July 19, 2021 is fraudulent. (Doc. 81.) The court has previously denied Plaintiff relief on this theory. (Doc. 69.) Therefore, it will not address the issue further, and the motion is dismissed with prejudice.

Likewise, the court will dismiss Plaintiff's attempt to have Defendants' counsel revoked. (Doc. 84.) Plaintiff seeks to have Defendants' counsel removed as a sanction for violating discovery orders. (*Id*.) Again, the court has ruled on these allegations and denied Plaintiff's previous requests. (Doc. 69.) Additional

attempts to sanction Defendants for discovery violations in this action will not be entertained by the court and will be viewed as deliberate attempts to delay the case.

## CONCLUSION

For the above state reasons, Defendants' motion for judgment on the pleadings will be granted in part. All claims will be dismissed except those raised against Defendants Larcass and DuFour for the January 28, 2018 use of O.C. spray against Plaintiff. Any claims for monetary damages can only be pursued against these Defendants in their individual capacity. Any claims for prospective injunctive relief may be brought against Defendants in their individual and official capacities. Plaintiff's motions seeking sanctions against Defendants will be dismissed.

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116–17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Therefore, Plaintiff will be afforded an opportunity to amend his pleadings on the claims against Defendants Wetzel, Knowles, and

Close and the claims associated with the January 28, 2018 denial of the haircut and the April 11, 2018 use of O.C. spray.

An appropriate order follows.

s/Jennifer P. Wilson  
JENNIFER P. WILSON  
United States District Judge  
Middle District of Pennsylvania

Dated: June 21, 2023